UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANNETTE MONSTREAM,

                Petitioner,

            v.

SUPERINTENDENT BEDFORD HILLS
CORRECTIONAL FACILITY,

                Respondent.

**ORDER**
No. 06-CV-0787(RJA)(VEB)

## INTRODUCTION

Annette Montstream ("Montstream") has filed a *pro se* petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 in this Court, challenging her conviction following a guilty plea in Niagara County Court of New York State Supreme Court to charges of first degree manslaughter, second degree criminal possession of a weapon, and second degree criminal solicitation. *See* petition (Docket No. 1). The matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b). Presently before the Court is Montstream's motion (Docket Nos. 15 & 16) seeking to have the petition stayed pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005).[1] For the reasons that follow, the motion to stay is denied without prejudice with leave to re-file.

**FACTUAL BACKGROUND PROCEDURAL HISTORY**

---

[1] In *Rhines v. Weber*, the Supreme Court held that, while district courts have discretion to grant stays, "stay and abeyance should be available only in limited circumstances." 544 U.S. 269, 277 (2005). Specifically, the Court held that "stay and abeyance is only appropriate" when: (1) the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court; and (2) the unexhausted claims are not "plainly meritless." *Id.*

On August 19, 1998, a Niagara County grand jury indicted Montstream for her alleged involvement in the shooting death of her husband. According to the statement that Montstream made to the police, she paid her co-defendant, Michael Northrup, to kill her husband, John Montstream. Montstream was charged under a theory of accomplice liability[2] with two counts of second degree murder, one count of second degree conspiracy, one count of second degree criminal possession of a weapon, and two counts of second degree criminal solicitation.

Following a pre-trial suppression hearing, Montstream's inculpatory statement to the police was held to be admissible. On March 6, 2000, Montstream elected to plead guilty to one count each of first degree manslaughter (N.Y. Penal Law § 125.20), second degree criminal possession of a weapon (N.Y. Penal Law § 265.03), and second degree criminal solicitation (N.Y. Penal Law § 100.10), in satisfaction of the indictment against her.[3] The plea package included a sentencing agreement and a waiver of her right to appeal. On June 19, 2000, Judge Peter L. Broderick, Sr. sentenced Montstream in accordance with the terms of the plea agreement to consecutive prison terms of 12 ½ to 25 years on the manslaughter charge, 6 ½ to 13 years on the weapons possession charge, and 1 to 3 years on the conviction for criminal solicitation in the second degree. The minimum consecutive sentence totaled 20 years, and the maximum totaled

---

[2] *See* N.Y. Penal Law § 20.00 ("When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.").

[3] "A person is guilty of manslaughter in the first degree when (1) with intent to cause serious physical injury to another person, he causes the death of such person." N.Y. Penal Law § 125.20. "A person is guilty of criminal possession of a weapon in the second degree when, with intent to use the same unlawfully against another … he possesses a loaded firearm." N.Y. Penal Law § 265.03. "A person is guilty of criminal solicitation in the second degree when, with intent that another person engage in conduct constituting a class A felony, he solicits, requests, commands, importunes or otherwise attempts to cause such other person to engage in such conduct." N.Y. Penal Law § 100.10. The three crimes to which Montstream pled guilty are, respectively, class B, C and D felonies.

41 years, which was reduced by operation of law to a maximum term of 40 years. See N.Y. Penal Law § 70.30. Thus, Montstream's aggregate sentence of imprisonment was 20 to 40 years.

Montstream obtained different counsel on direct appeal and raised the following issues: the legality of the consecutive sentences, the factual sufficiency of her plea allocution, and whether her guilty plea and waiver of right to appeal were valid. The Appellate Division, Fourth Department, unanimously affirmed her conviction. *People v. Montstream*, 21 A.D.3d 1353, 804 N.Y.S.2d 154 (App. Div. 4th Dept. 2005), *lv. denied*, 6 N.Y.3d 756, 843 N.E.2d 1164, 810 N.Y.S.2d. (N.Y. ).

Montstream filed her federal habeas petition on November 27, 2006. *See* Petition (Docket No. 1). Respondent answered the petition on . Montstream now has filed a motion for a stay (Notice of Motion (Docket No. 15) & Affirmation (Docket No. 16); this application also appears to be a motion to amend her petition. Because it is unclear what claims Montstream is attempting to assert in the petition and what type of relief she seeks in the motion to stay, it is necessary to set forth Montstream's allegations in some detail below before resolving the presently pending motion.

## DISCUSSION

**Petitioner's Habeas Petition**

Beginning at paragraph 22(A) on page 7 of the District Court's form habeas petition, petitioners are instructed to state concisely every ground on which they claim they are being held unlawfully and to summarize the facts supporting each claim and to attach additional pages if necessary. Under Paragraph 22(A) through 22(D), in the lined spaces provided, there are some

handwritten allegations. *See* Petition at 7-8, ¶¶ 22(A)-(D) (Docket No. 1). Those statements represent the entirety of Montstream's allegations in her habeas petition. Montstream did not submit a memorandum of law in support of the petition.

In her Answer (Docket No. 3) and Memorandum of Law (Docket No. 4), respondent interpreted Montstream to have raised eight (8) claims in the Petition. With regard to Montstream's notation "A,B,E,F" in the space following "Ground one" on page 7 of the District Court's form habeas petition, respondent has assumed that Montstream is referring to the constitutional claims which are printed above under Paragraph 22 on the form habeas petition and lettered "(a)" through "(j)". The grounds are listed for petitioners' convenience and the instructions to petitioners state *not* to simply check-off the listed grounds. Montstream has circled (a), (b), (e), and (f) on the form petition.

I agree that respondent's interpretation of what Montstream meant by the notation "A,B,E,F" and circling "(a)", "(b)", "(e)", and "(f)" is reasonable–it appears that Montstream is attempting to assert (1) that her "[c]onviction [was] obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature and consequences of the plea" (i.e, Ground (a)); (2) that her "[c]onviction [was] obtained by use of coerced confession" (i.e., Ground (b)); (3) that her "[c]onviction [was] obtained by violation of privilege against self-incrimination" (i.e., Ground (e)); and (4) her "[c]onviction [was] obtained by unconstitutional failure of prosecution to disclose to the defendant evidence favorable to the defendant" (Ground (f)).

Respondent argues that these four claims ("A,B,E,F") are unexhausted because they were not raised on direct appeal or in a post-verdict motion to vacate the judgment.[4] Furthermore, respondent notes that Montstream "provides no facts or assertions to support" the claims and argues that, in any event, they are without merit. *See generally* Respondent's Memorandum of Law ("Resp't Mem.") at 6 *et seq.* (Docket No. 4).

Apart from the notation "A,B,E,F" under Ground one of Paragraph 22 of the form petition, there are handwritten allegations in the lined spaces given for Ground one, Ground two, Ground three, and Ground four. Under Ground one, after "A,B,E,F", Montstream has written the following:

> My co-defendant [Michael Northrup] was acquitted and I was going to be charged with conspiracy in the second degree. My consecutive sentences are very harsh, I was not there when my husband was killed. Mr. Michael Northrup did the crime, yet I am the one paying for the crime. He is walking free, and I am in prison for a crime that I did not commit. How can the courts allow the person who did this go free? I did not kill my husband; yes I was frustrated But I did not do this crime.

Petition at 7, ¶22(A) (Docket No. 1).

Under Ground two, Montstream has simply written, "My husband would not let me leave him; but I did not kill him. Because of that; he was my husband." Petition at 8, ¶22(B) (Docket No. 1).

Under Ground three, Montstream states as follows:

> The district attorney never told me my sentence [sic] would be consecutive. I would like to go back to court. I would ask about my sentence. I would ask how

---

[4] As respondent notes, Montstream raised the following arguments on direct appeal: (1) the consecutive sentences were illegal as a matter of New York state law; (2) the factual allocution was insufficient to sustain her guilty plea; and (3) whether her waiver, as part of the guilty plea, of her right to appeal was valid so as to allow the first two issues to be heard on direct appeal.

>much time I was going to get. The DA never told me about the consecutive sentencing.

Petition at 8, ¶22(C) (Docket No. 1).

>Finally, under Ground four, Montstream writes,

>>I would like for my sentences to run together. How can I have a possession charge and never had the weapon? Never seen it, touched it or possessed it.

Petition at 8, ¶22(D) (Docket No. 1). As noted above, the foregoing statements represent the entirety of Montstream's allegations in her habeas petition.

Respondent's argument with regard to the foregoing statements is as follows, "Regardless of the relative merit, if any, of these claims, none raise or even allude to a federal constitutional question required for habeas relief." Respondent also argues that these claims are unexhausted.

In interpreting the Petition, I am mindful that Montstream is proceeding *pro se* and that her submissions should be held "'to less stringent standards than formal pleadings drafted by lawyers. . . .'" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995) ("The complaint of a *pro se* litigant is to be liberally construed in his favor.") (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983) (finding that where a petitioner is proceeding *pro se* and "lack[s] expertise," the Court "should review [his] habeas petition[ ] with a lenient eye"). Interpreting Montstream's allegations liberally to raise the strongest arguments they suggest, it appears that she may be attempting to assert, in Ground one, a claim of inconsistent verdicts. Montstream appears to be saying that because she

was indicted under a theory of accomplice liability (N.Y. Penal Law § 20.00) of soliciting her co-defendant to murder her husband, her conviction is illegal because the co-defendant was later acquitted. Montstream also is apparently alleging that the factual allocution of her plea to the manslaughter charge was insufficient.

With regard to Ground two, I agree with respondent that Montstream's factual allegations are insufficient to determine what type of constitutional claim (if any) she is asserting here. Montstream must provide further information to the Court as to whether her statement, "My husband would not let me leave him . . ." is intended to set forth a separate claim or whether it is a continuation of the allegations from Ground one.

Turning to Ground three, it appears to this Court that Montstream is alleging that her guilty plea was involuntary because she purportedly was not aware of the sentence promise involved in the plea agreement.

Finally, in Ground four, it appears that she is (1) challenging the legality of her consecutive sentences and (2) the factual sufficiency of her guilty plea with regard to the weapons possession charge.

**Petitioner's Motion for a Stay**

Montstream states that she "can demonstrate 'good cause' for the filing of a CPL § 440 Motion based on ineffective assistance of trial counsel because counsel did not clear up the inconsistency with the sentence, consecutive versus concurrent." It is unclear whether she is discussing "good cause" for her failure to exhaust the claims raised in the original petition, or whether she wishes add several claims of ineffective assistance of trial counsel to her original

petition and proceed to exhaust them by means of a motion to vacate under New York Criminal Procedure Law ("C.P.L.") § 440.10.

Stated another way, it is unclear to me whether she wishes (1) to return to state court to exhaust *only* the claims raised in the original petition (Docket No. 1); (2) to return to state court to exhaust the claims raised in the original petition *plus* several new claims of ineffective assistance of trial counsel set forth in the motion for a stay; (3) to abandon the claims raised in the original petition and return to state court only to exhaust the new claims of ineffective assistance of trial counsel stated in the motion for a stay; or (4) some combination of these approaches. I cannot rule on Montstream's motion unless she provides more clarification on the claims she wishes to pursue. In addition, Montstream has not adequately addressed the *Rhines* factors so I cannot assess whether it is an appropriate exercise of discretion to utilize the stay-and-abeyance procedure in her case.[5]

Therefore, I am going to dismiss Montstream's motion for a stay without prejudice to re-file. Before re-filing her motion for a stay, Montstream must decide which claim(s) she wishes to pursue and which claims, if any, she intends to abandon. If she wishes to *add new claims* to her petition, she must file a motion to amend the petition along with her re-filed motion for a stay. Montstream is advised that the motion to amend the petition must attach a proposed amended petition that raises *both* the claims now raised in the petition *and* the new claim or claims that she seeks to exhaust and then add to the instant habeas corpus proceeding. She *must* do the

---

[5] The Supreme Court commented in *Rhines* that "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had [1] good cause for his failure to exhaust, [2] his unexhausted claims are potentially meritorious, and [3] there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." 544 U.S. at 278. On the other hand, even if a petitioner had "good cause" for the failure to exhaust the claims first, it would be an abuse of discretion to grant a stay when the claims are "plainly meritless." *Id.* at 277 (citing 28 U.S.C. § 2254(b)(2)).

following in the motion to amend the petition: (1.) Describe in a detailed affirmation all of the facts in her knowledge supporting each constitutional claim she wishes to present to the Court, and set forth the legal bases supporting each claim; (2.) describe in detail what steps, if any, she has taken to exhaust each claim; and (3) address whether the new claim or claims are timely under 28 U.S.C. § 2244(d)(1) ("A 1 year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."), and, if not, whether they "relate back" to the original petition pursuant to *Mayle v. Felix*, 545 U.S. 644 (2005).[6]

Next, in her re-filed motion for a stay, Montstream must address the *Rhines* factors. In particular, she is directed to do the following: (1.) Explain in a detailed affirmation why she was unable to present each of her unexhausted claims to the state courts in the first instances so as to enable the Court to determine whether she has "good cause"[7] for the failure to exhaust and

---

[6] Where a petitioner seeks to add a new claim to his habeas petition after the expiration of the statute of limitations, he is required to show that the proposed amendment "relates back" to the claims in the original petition. *Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 816 (2d Cir. 2000) ("[W]e hold that Rule 15(c) [of the Federal Rules of Civil Procedure] applies to [28 U.S.C.] § 2254 petitions for habeas corpus."). An amendment relates back if the claim that is sought to be added "arose out of the conduct, transaction, or occurrence set forth" in the original petition. FED. R. CIV. P. 15(c)(1)(B). The Supreme Court recently has circumscribed the definition of Rule 15(c)'s "conduct, transaction, or occurrence" in the habeas context, holding that it cannot be read to encompass a petitioner's state-court criminal "trial, conviction, or sentence." *See Mayle v. Felix*, 545 U.S. 644, 656 (2005). "[R]elation back will be in order" provided that "the original and amended petitions state claims that are tied to a common core of operative facts." *Id.* A proposed amendment, however, will not "relate back" to the date of the original petition "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.*

[7] The Supreme Court did not define "good cause" in *Rhines v. Weber*. Subsequently, the Supreme Court mentioned the "good cause" requirement in *Pace v. DiGuglielmo*, stating, "A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." 544 U.S. 408, 416 (2005). The district courts have applied different definitions of "good cause." *Aessa v. Annetts*, No. 06 CV 5830(ARR), 2007 WL 1299155, at *3 (E.D.N.Y. Apr. 30, 2007) (citing *Bryant v. Greiner*, No. 02 Civ. 6121, 2006 WL 1675938, at *5 (S.D.N.Y. June 15, 2006); *Brown v. Ebert*, No. 05 Civ. 5579, 2006 WL 1273830, at *2-*3 (S.D.N.Y. May 9, 2006)). Some courts have found that the "good cause" standard for a stay requires "a lesser showing" than the "cause" standard necessary to overcome a procedural bar. *See id.* (citing *Bryant*, 2006 WL 1675938, at *5 (citing *Fernandez v. Artuz*, 2006 WL 121943, at *6-*7 (S.D.N.Y. Jan. 18, 2006)). One district court observed, "[M]ost of the courts which have thus far engaged in an in-depth analysis of the issue have required that 'good cause' arise from something external, and not fairly attributable, to the petitioner." *Ramdeo v. Phillips*, No. 04 Civ. 1157, 2006 WL

whether she engaged in intentionally dilatory litigation tactics; and (2.) Explain in the affirmation why the claims she seeks to exhaust are "potentially meritorious."

## CONCLUSION

For all of the reasons discussed above, the Court has an insufficient basis on which to decide Montstream's motion to amend. Further, because petitioner has failed to show both "good cause" for the failure to exhaust and that the new claim or claims are "potentially meritorious," petitioner's request to hold this proceeding in abeyance with respect to any unexhausted claim or claims must be denied without prejudice. **The Court points out that this Order does not in any way limit petitioner's ability to begin to pursue any *state* court remedies that may be available to her with regard to her unexhausted claim or claims independent of her habeas petition. She is advised, however, that she must fulfill the conditions stated herein for amending her habeas petition so as to present any additional claims to this Court.**

Accordingly,

**IT IS HEREBY ORDERED** that, petitioner's motion for a stay to hold the petition in abeyance (Docket Nos. 15 & 16) is **DENIED** without prejudice to re-filing upon a showing pursuant to *Rhines v. Weber*, 544 U.S. at 277-78, that (1) there is "good cause" for petitioner's failure to exhaust the new claims; (2) that the new claims relates back under FED. R. CIV. P. 15

---

297462, at *6 (E.D.N.Y. Feb. 8, 2006) (finding no good cause based on inadvertent, good-faith failure to exhaust).

and *Mayle v. Felix*, 545 U.S. at 650,[8] to the claims originally pled in the petition; and (3) that the new claims are potentially meritorious. *See Faden v. Annetts*, 05 Civ. 1850 (BSJ) (DF), 2005 WL 1765714 (S.D.N.Y. July 26, 2005) (denying request for stay without prejudice to renew upon a showing of "good cause", that the proposed claims "relate back", and that the new claims are "potentially meritorious").

**If petitioner re-files her motion for a stay, she must do so within thirty (30) days of her receipt of this Order.** Petitioner must serve the re-filed motion for a stay on respondent's counsel.

**FURTHER**, to the extent petitioner seeks to add a new claim or claims to the petition, she shall, in addition to re-filing the motion for a stay, file and serve upon respondent a motion to amend the petition pursuant to FED. R. CIV. P. 15 which addresses the issue of timeliness of the new claim and "relation back" as discussed in more detail above. Petitioner shall also attach a proposed amended petition to her motion to amend. The proposed amended petition must set forth with specificity the factual and legal bases for both the claims now raised in the petition and the new claims petitioner seeks to add to the instant habeas corpus proceeding. **If petitioner files her motion to amend the petition, she must do so within thirty (30) days of her receipt of this Order– that is, at the same time she refiles her motion for a stay.** Petitioner's motion to amend the petition must be served upon respondent's counsel.

**FURTHER**, should petitioner re-file her motion for a stay and a proposed amended petition, respondent shall have thirty (30) days from the date of service of those pleadings to

---

[8] "An amended habeas petition . . . does not relate back (and thereby escape [28 U.S.C. § 2244(d)(1)]'s one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle*, 545 U.S. at 650.

submit an opposing memorandum of law. Petitioner shall have twenty (20) days from the date she receives respondent's opposition papers to submit a reply memorandum of law.

**FURTHER**, the Clerk of the Court is directed to send petitioner a Form Petition For Habeas Corpus Relief Pursuant to 28 U.S.C. § 2254, which petitioner should use for her proposed amended petition. Petitioner is advised that she may attach additional pages to the petition form to explain the exact nature of her claims.

**IT IS SO ORDERED**.

/s/ *Victor E. Bianchini*
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:   March 6, 2008
         Rochester, New York.