UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANNETTE MONTSTREAM,

                Petitioner,           No. 06-CV-0787(RJA)(VEB)
    -vs-                                   REPORT AND RECOMMENDATION

SUPERINTENDENT, Bedford Hills
Correctional Facility,

                Respondent.
_____

I.      Introduction

*Pro se* petitioner Annette Montsream ("Montsream" or "Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of her detention in state custody as the result of a judgment of conviction following a guilty plea in Niagara County Court. This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1).

Presently pending is Montstream's Amended Petition in which Montstream asserts as follows:

> 1. Amended Ground One: "Rule against consecutive sentences for crimes compromised [sic] of a single act or omission operates to restrict the [c]ourt from imposing [consecutive] sentences in this case[.]" See Petitioner's Memorandum of Law dated June 16, 2008.
> 2. Amended Ground Two: "Petitioner's factual allocution is not sufficient with respect to the crime of Criminal Possession of a Weapon in the Second Degree." See Petitioner's Memorandum of Law dated June 16, 2008.
> 3. Amended Ground Three: "Lack of 'competent and meaningful' legal representation as guaranteed by the United States Constitution, 6th, 14thamendment; New York State Constitution, Article I Section 6" because (a)"Defense Counsel's Off-The-Record Coercive
> Conduct Invalidate[d] Defendant's Plea"; (b) the "Cooperation Agreement Was Invalid [sic] by Mr. Cambria's Breach of Duty to Protect Client During the Plea Colloquy"; and (c) "Mr. Cambria's Amending [of the] Grand Jury Indictment

[during the plea] is Unconstitutionally Deficient and Invalid". See Petitioner's
C.P.L. § 440.10 Motion, Point I, §§ A, B & C.
4. Amended Ground Four: The "Acting in Concert" charge against Montstream is
"statutorily barred" and was "improperly charged in defendant's superseding
indictment." See Petitioner's C.P.L. § 440.10 Motion, Point II.

Respondent has answered the Amended Petition. Montstream has filed a Reply in response to Respondent's Answer and Opposition Memorandum of Law.

For the reasons that follow, it is recommended that the Amended Petition be dismissed.

## II. Factual Background and Procedural History

On August 19, 1998, a Niagara County grand jury indicted Montstream for her alleged involvement in the shooting death of her husband. According to the statement that Montstream made to the police, she paid her co-defendant, Michael Northrup, to kill her husband, John Montstream. Montstream was charged under a theory of accomplice liability,[1] with two counts of second degree murder, one count of second degree conspiracy, one count of second degree criminal possession of a weapon, and two counts of second degree criminal solicitation.

Following a pre-trial suppression hearing, Montstream's inculpatory statement to the police was held to be admissible. On March 6, 2000, Montstream elected to plead guilty to one count each of first degree manslaughter (N.Y. Penal Law § 125.20), second degree criminal possession of a weapon (N.Y. Penal Law § 265.03), and second degree criminal solicitation (N.Y. Penal Law § 100.10), in satisfaction of the indictment against her.[2] The plea deal included

---

[1] *See* N.Y. Penal Law § 20.00 ("When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.").

[2] "A person is guilty of manslaughter in the first degree when (1) with intent to cause serious physical injury to another person, he causes the death of such person." N.Y. Penal Law § 125.20. "A person is guilty of criminal possession of a weapon in the second degree when, with intent to use the same unlawfully against another

a sentencing agreement and a waiver of her right to appeal. On June 19, 2000, Judge Peter L. Broderick, Sr. sentenced Montstream in accordance with the terms of the plea agreement to consecutive prison terms of 12 1/2 to 25 years on the manslaughter charge, 6 1/2 to 13 years on the weapons possession charge, and 1 to 3 years on the conviction for criminal solicitation in the second degree. The minimum consecutive sentence totaled 20 years, and the maximum totaled 41 years, which was reduced by operation of law to a maximum term of 40 years. See N.Y. Penal Law § 70.30. Thus, Montstream's aggregate sentence of imprisonment was 20 to 40 years.

Montstream obtained different counsel on direct appeal and raised the following issues: the legality of the consecutive sentences, the factual sufficiency of her plea allocation, and whether her guilty plea and waiver of right to appeal were valid. The Appellate Division, Fourth Department, unanimously affirmed her conviction. People v. Montstream, 21 A.D.3d 1353, 804 N.Y.S.2d 154 (App.Div. 4th Dept.2005), lv. denied, 6 N.Y.3d 756, 843 N.E.2d 1164, 810 N.Y.S.2d. (N.Y.).

### III.    Applicable Legal Principles

Federal habeas review is available for a State prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Supreme Court has established beyond debate that mere errors of State law are not colorable grounds for Federal habeas relief. *See*, *e.g.*, *Estelle v McGuire*, 502 U.S. 62, 67-68 (1991); *Cupp v Naughten*, 414 U.S. 141, 146 (1970).

---

... he possesses a loaded firearm." N.Y. Penal Law § 265.03. "A person is guilty of criminal solicitation in the second degree when, with intent that another person engage in conduct constituting a class A felony, he solicits, requests, commands, importunes or otherwise attempts to cause such other person to engage in such conduct." N.Y. Penal Law § 100.10. The three crimes to which Montstream pled guilty are, respectively, class B, C and D felonies.

The Court's review of habeas petitions filed pursuant to 28 U.S.C. § 2254 is governed by standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214. *E.g.*, *Brisco v. Ercole*, 565 F.3d 80, 87 (2d Cir. 2009) (citing *Messiah v. Duncan*, 435 F.3d 186, 196-98 (2d Cir. 2006)). The Second Circuit has summarized the main points of the AEDPA inquiry as follows:

> Under AEDPA, a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We must presume the state court's factual findings to be correct and may overturn those findings only if the petitioner offers "clear and convincing evidence" of their incorrectness. 28 U.S.C. § 2254(e)(1).

*Hoi Man Yung v. Walker*, 468 F.3d 169, 176 (2d Cir. 2006) (quoted in *Brisco*, 565 F.3d at 87).

## IV. Analysis of the Petition

### A. Ground One: Erroneous Imposition of Consecutive Sentences

On direct appeal, the Fourth Department rejected Montstream's claim regarding the imposition of consecutive sentences on the merits. As Respondent argues, this claim is not cognizable on federal habeas review, which is is limited to questions of constitutional and federal law, and "there is no constitutionally cognizable right to concurrent, rather than consecutive, sentences." *United States v. McLean*, 287 F.3d 127, 136-37 (2d Cir. 2002) (internal quotations omitted); *see also Flores v. Ercole*, No. 09-CV-602 DLI, 2010 WL 3951048, at *4 (E.D.N.Y. Oct. 7, 2010) (citing *Charles v. Fischer*, 516 F. Supp.2d 210, 224 (E.D.N.Y. 2007) (holding that the imposition of consecutive sentences under state law is not a ground for habeas relief);

*Figueroa v. Grenier*, 2005 WL 249001, at *15 (S.D.N.Y. Feb. 3, 2005) (same); *Davis v. Herbert*, 2003 WL 23185747, at *15 (E.D.N.Y. Oct.24, 2003) (same)).

The Appellate Division explained that Montstream's sentences were not erroneous as a matter of state law:

> Contrary to defendant's contention, the consecutive terms of incarceration imposed by County Court are not illegal. Consecutive sentences are appropriate where, as here, "separate offenses are committed through separate acts, though they are part of a single transaction" (*People v Brown*, 80 NY2d 361, 364 (19920; *see People v Sell*, 283 AD2d 920, 922 (2001), *lv denied* 96 NY2d 867 (2001)). According to the statement of defendant made to the police, she asked her codefendant to kill her husband and was aware on the evening of the shooting that her codefendant was setting up a meeting with her husband to carry out the killing, and defendant did nothing to prevent the killing or to warn her husband. In addition, she was aware that her codefendant possessed a pistol with which he intended to kill her husband, and she admitted that she already knew that her husband was dead and knew where his body was located before the police arrived at her home to inform her that her husband was dead. Defendant also admitted that it was her idea to park the family's van, containing her husband's body, in the specific parking lot where the van was found. We note in addition that consecutive sentences are permitted for the crimes of criminal possession of a weapon in the second degree and manslaughter in the first degree committed by defendant herein because "[p]ossession with intent to use the weapon unlawfully [is] an act separate and distinct from the actual use of the weapon to kill [the] victim" (*Sell*, 283 AD2d at 922).

*People v. Montstream*, 21 A.D.3d at 1353. Thus, there was no error of New York state law, much less an error of federal constitutional magnitude. It should be emphasized that the consecutive sentencing was part of the very favorable plea agreement which trial counsel was able to secure for his client.

In sum, Ground One should be dismissed because the allegations therein present no federal constitutional question amenable to habeas review.

**B.  Ground Two: Insufficiency of Petitioner's Factual Allocution**

Montstream asserts that her plea colloquy was defective because she merely responded in "yes" and "no" replies to factual questions posed to her, rather than in her own words describing her involvement in the crimes to which she was pleading guilty. When Petitioner raised this claim on direct appeal, the Appellate Division held that Montstream's voluntary, knowing, and intelligent waiver of the right to appeal "encompasse[d] the contention . . . concerning the alleged factual insufficiency of the plea allocution[.]" *People v. Montstream*, 21 A.D.3d at 1353 (citing, *inter alia*, *People v McKay*, 5 A.D.3d 1040, *lv. denied*, 2 N.Y.3d 803 (N.Y. 2004)). The Fourth Department found that, in any event, Montstream failed to preserve for review the contention concerning the alleged insufficiency of the factual allocation. *Id.* (citing *People v. Lopez*, 71 NY2d 662, 665 (N.Y. 1988)). Montstream also asserted this claim in support of her C.P.L. § 440.10, arguing the trial court improperly delegated the plea-taking authority to the prosecutor and defense counsel. The County Court held that there was no case law or constitutional principle mandating that a defendant allocute in her own words and noted that many cases had upheld the use of leading questions during plea colloquys designed to elicit affirmative responses.

The County Court also rejected the claim that the participation of the prosecutor and the defense attorney in the questioning of Montstream during her allocution rendered it defective. The County Court noted that it had supervised carefully the entire process, ensuring that Montstream's right to counsel was safeguarded. This Court's review of the transcript bears out this assertion. Furthermore, the County Court correctly noted, since Montstream was going to be the key prosecution witness at co-defendant Northrup's trial, it was understandable that her attorney wished to monitor the nature and extent of her plea allocution.

Respondent argues that Petitioner's argument that her plea allocution was insufficient does not raise a federal constitutional issue. Respondent's Memorandum of Law ("Resp't Mem.") at 4 (citing *Hill v. West*, 599 F. Supp 2d 371, 388 (W.D.N.Y 2009) (Siragusa, D.J., adopting Report and Recommendation of Bianchini, M.J.). The United States Constitution does not require a factual inquiry before a court may accept a defendant's guilty plea. *Hill*, 599 F. Supp.2d at 388 (citing *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir.1984) ("[D]ue process does not mandate a factual basis inquiry by state courts . . . .") (citing, *inter alia*, *McCarthy v. United States*, 394 U.S. 459, 465, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)). As the Second Circuit explicitly noted in *Willbright*, it is Rule 11 of the Federal Rules of Criminal Procedure, "not due process, that requires federal courts to conduct a factual inquiry before accepting a guilty plea." 745 F.2d at 780; *see also Ames v. New York State Div. of Parole*, 772 F.2d 13, 15 (2d Cir.1985) ("The State court's [guilty plea] inquiry did not have to be patterned after Fed. R.Crim. P. 11.").

It is beyond dispute that habeas relief under 28 U.S.C. § 2254(a) is only available for a violation of a defendant's rights under the United States Constitution. Here, however, Montstream has failed to establish that either a violation of New York state law or an error of federal constitutional magnitude occurred during the trial judge's conduct of the plea allocution. Accordingly, I recommend dismissing Montstream's claim on the basis that it is neither cognizable on federal habeas review nor meritorious.

    **C.**    **Ground Three: Ineffective Assistance of Trial Counsel – Coercion**

"A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. 'He may only attack the voluntary and intelligent character of the guilty plea by showing that the

advice he received from counsel was not within [acceptable] standards.'" *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir.1996) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (alteration in original)).

In denying her C.P.L. § 440.10 motion, the County Court found that Montstream had received constitutionally effective assistance when counsel's performance was judged against both the New York state and the federal standards. The County Court noted,

> Through able and experienced trial counsel, this then-41-year-old defendant crafted a plea deal with the prosecution. Charged in a six-count indictment with an A-1 felony of second-degree murder (two counts), a B-felony of second-degree conspiracy, a C-felony of second-degree criminal possession of a weapon, and a D-felony of second-degree criminal solicitation (two counts), a trial conviction (a virtual certainty given the evidence available to the prosecution) would have secured a hefty prison sentence for Mrs. Montstream . . . a mandatory life sentence. The defense attorney obtained a plea reduction to a violent B-felony of first degree manslaughter, together with guilty pleas to one violent C-felony of criminal possession of a weapon and one non-violent D-felony of criminal solicitation second degree . . . which dropped the mandatory life sentence to a maximum agreed sentence of twenty to forty-one years.

C.P.L. § 440.10 Order at 4-5, attached to Petitioner's Amended Petition (ellipses in original).

During the plea colloquy, petitioner admitted that she asked Northrup, her accomplice, to kill her husband, that Northrup told petitioner that he had a handgun, that petitioner drove a getaway car to Niagara Falls on the day of the killing, and that petitioner assumed that Northrup had a handgun with him when he drove the car to Niagara Falls that day to kill petitioner's husband. R.937- 940. Before petitioner pleaded guilty, she told the court that she consulted with her attorney and was satisfied with his assistance. Petitioner then pleaded guilty. R.940. "These facts demonstrate the knowing and voluntary character of his guilty plea and the lack of substance to his attacks on trial counsel." *Hill v. West*, 599 F. Supp 2d at 392. Montstream argues

that the plea was involuntary because she did not "solicit" Northrup to kill her husband. The County Court noted that throughout her testimony from Northrup's three trials (the first two of which resulted in hung juries and the third, an acquittal), she "repeatedly illuminated the reason for her initial denial of "soliciting" during the plea colloquy–that she did not have an understanding of the meaning of the word solicit. C.P.L. § 440.10 Order at 6. After she had an off-the-record discussion with her attorney, she acknowledged that she had, in fact, committed the crime of soliciting Northrup to kill her husband. *Id.* (citing Transcript from Northrup's First Trial, Volume 3, page 2038), attached to Amended Petition (Docket No. 26).

With regard to Montstream's claim of the off-the-record conversation with her attorney during the plea colloquy actually were coercive, involving threats and promises to induce her to plead guilty. The County Court rejected this as factually baseless, describing it as "unbelievable" and "fanciful". I agree with the County Court that Montstream has never substantiated this claim. Petitioner's after-the-fact insistence that she would have proceeded to trial but for trial counsel's alleged coercion appears to stem from her frustration that although she cooperated with the prosecution and provided sworn testimony at three trials of her co-defendant, Northrup, he ultimately was acquitted of the charges against him and is today a free man.

Montstream has never been able to substantiate her assertion that trial counsel's alleged off-the-record statements overbore her will and coerced her into pleading guilty. Montstream stated under oath that she had not been threatened or coerced. *See* Transcript of Plea Proceedings at 14. As the Supreme Court explained in *Blackledge v. Allison*:

> [T]he representations of the defendant, [her] lawyer, and the prosecutor at such a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn

> declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the fact of the record are wholly incredible.

431 U.S. 63, 71-74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Montstream's statements under oath during the plea colloquy belie her claims of coercion, duress, threats, involuntariness, fraud, manipulation, and misrepresentation.

In addition, I agree with Respondent that Petitioner has failed to prove the requisite prejudice as a result of trial counsel's allegedly deficient performance. When determining the effectiveness of counsel's assistance with regard to the decision to plead guilty, prejudice is established "by proving that but for counsel's alleged errors, [petitioner] would have insisted on proceeding to trial." *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Looking at the circumstances of her case realistically, there is no reasonable probability that she would have chanced a trial. Petitioner's inculpatory statement was held at a suppression hearing to admissible against her. Part of her plea agreement was to testify truthfully for the prosecution against Northrup. Over the course of co-defendant Northrup's three trials, Montstream testified under oath consistently as to her participation in the plan to kill her husband and leave his dead body in an abandoned van. The County Court opined that a review of her testimony from these three proceedings revealed "beyond any doubt" that Montstream was guilty of the crimes charged, noting that she had "affirmed too many times under oath that she knowingly and intentionally solicited and assisted Mr. Northrup to murder her husband." C.P.L. § 440.10 Order at 6 (citations to Northrup's trial transcripts omitted), attached to Amended Petition (Docket No. 26).

The County Court did not inaccurately describe the evidence against Montstream as "overwhelming"–it included her inculpatory statements to the police; a trail of witnesses to testify regarding her attempts to solicit various persons, besides Northrup, to kill her husband; and a life insurance policy on her husband's life, of which she was the beneficiary, worth $800,000.

In sum, the prosecution had a very compelling case against her. Montstream was charged in a six-count indictment with an A-1 felony (second degree murder, two counts), Petitioner likely would have been convicted of murder in the second degree and consequently would have faced a potential life-time of incarceration–an indeterminate 25-year-to-life sentence. However, her trial attorney–whom the court characterized as "one of the most experienced and outstanding criminal defense attorneys in the United States"–negotiated a sentence with a cap of 41 years and a minimum of 20 years, giving her a greater probability of being paroled while she is still relatively young.

For the reasons discussed above, I recommend finding that Montstream's counsel provided competent representation. She has not demonstrated the requisite prejudice because there is no reasonable probability that but for counsel's alleged errors (which she has not established) she would not have pleaded guilty. The record fully supports the rulings by the state courts that Montstream's plea was knowing, voluntary, and intelligent, and that it was the best option open to her at the time. On the record before the Court, it is clear that her constitutional rights were not prejudiced. Therefore, Ground Three should be dismissed.

**D.     Ground Four: Erroneous conviction on an "acting in concert" theory**

Montstream contends that her defense attorney impermissibly amended her indictment

and unlawfully induced her to plead guilty to criminal solicitation. She states the statutory language set forth in New York Penal Law ("P.L.") 20.00 is absent from the indictment originally returned against her. Montstream asserts that there is no language in the indictment that she solicited, commanded, opportuned, requested, or intentionally aided, *see* P.L. § 20.20, Northrup to kill her husband. Montstream states that an "indictment charging acting in concert is statutorily barred." Because there are no acting-in-concert allegations in the indictment, she could not plead guilty to charges that involved solicitation; she characterizes the indictment as "defective" and argues that one cannot plead guilty to a defective indictment.

This claim is patently without merit. It seems to be a reworking of Petitioner's other claims that she is not guilty of the crimes to which she pleaded guilty. The only case cited by Petitioner in support of this allegation is *United States v. Clemente*, 23 F.3d 477 (2d Cir. 1994). *Clemente*, however, is not on point. There the defendant argued that the admission *at trial* of evidence of acts of extortion not specifically charged in the indictment, when combined with instructions from the judge that were inadequate, constituted a constructive amendment of the indictment because it allowed the *jury* to convict them on a basis different from that advanced by the grand jury. 23 F.3d at 481. A constructive amendment occurs where the evidence and charging instructions underlying a conviction "modify essential elements of the offense charged" in the information or indictment. *United States v. Clemente*, 22 F.3d at 482.

There is no clearly established Supreme Court precedent stating that a constructive amendment claim is cognizable in the context of a defendant's guilty plea. *Thomas v. United States*, 2006 WL 27442, at *5 n. 4 (S.D.N.Y. Jan. 4, 2006) ("Although the issue is rarely discussed, there appears to be some disagreement across the Circuits concerning the availability

of a constructive amendment claim after a guilty plea. *Compare, United States v. Iacaboni*, 363 F.3d 1, 7 (1st Cir.2004) (evaluating a constructive amendment claim in the context of a guilty plea), *with United States v. Barrientos*, 263 F.3d 162 & n. 3 (5th Cir.2001) (unpublished opinion) (noting that "constructive amendment inquiries typically are conducted in the context of jury trials and guilty verdicts, not guilty pleas," thus declining to ground its mandate on the defendant's constructive amendment argument)). The Second Circuit does not appear to have taken a position on the issue. *Id.* Other district courts have found that a constructive amendment claim is not cognizable in a defendant's attack on her guilty plea. *E.g.*, *Reese v. United States*, No. CV-04-4338 (DGT), 2006 WL 2711610, *5 (E.D.N.Y. Sept. 21, 2006) ("The definition of constructive amendment just does not comport with a guilty plea. 'An indictment is constructively amended when the proof at trial broadens the basis of conviction beyond that charged in the indictment.' *United States v. Patino*, 962 F.2d 263, 265 (2d Cir .1992) (citing *United States v. Miller*, 471 U.S. 130, 144-45 (1985)). When a defendant pleads guilty, there is no trial and no evidence is presented. *United States v. Ocasio*, No. 02-CV-1192, 2004 WL 1242424, at *5 (D. Conn. June 3, 2004) (questioning the use of a constructive amendment claim in the context of a guilty plea). Therefore, it seems unlikely that a constructive amendment claim is available to petitioner after his guilty plea."). I agree with the district court's analysis in *Reese*. However, the absence of any clearly established Supreme Court precedent on this point is, standing alone, a sufficient basis on which to deny habeas relief. *See Carey v. Musladin*, 549 U.S. 70, 127 S.Ct. 649, 654 (2006) ("Given the lack of holdings from the Court regarding this [issue], it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" ); *Yarborough v. Alvarado*, 541 U.S. 652, 659, 124 S.Ct. 2140, 2147 (2004) ( "We look

for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'" ); *accord*, *e.g.*, *Georgison v. Donelli*, 588 F.3d 145, 153-54 (2d Cir.2009); *Dunlap v. Burge*, 583 F.3d 160, 164 (2d Cir.), *cert. denied*, 130 S.Ct. 642, (2009) Accordingly, I recommend that Ground Four be dismissed.

## V.  Conclusion

For the foregoing reasons, I recommend that the Amended Petition for a writ of Habeas Corpurs filed by Annette Montstream be dismissed. I also recommend concluding that no certificate of appealability should issue with respect to any of Montstream's claims as, in this Court's view, she has failed to make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

/s/ Victor E. Bianchini

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated:  January 4, 2011
　　　　　Buffalo, New York.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to petitioner and respondent.

**IT IS SO ORDERED.**

/s/ Victor E. Bianchini

VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: January 4, 2011
Buffalo, New York